**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**TERRY THORNBERRY**                                                                    **PLAINTIFF**

**V.**                            **CASE NO. 4:08CV003606 BSM**

**UNION PACIFIC RAILROAD COMPANY**                          **DEFENDANT**

**<u>DEFENDANT UNION PACIFIC RAILROAD COMPANY'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER</u>**

**I.**        **<u>FACTUAL BACKGROUND.</u>**

Plaintiff alleges that he was injured at work on September 6, 2007 when he fell over a piece of cross-tie used to support an outrigger on a boom truck. Plaintiff is a trackman. That day, his crew was replacing tracks at the site of a train derailment. A vehicle known as a hy-rail was being used to do the drilling.[1] Because the outriggers on the hy-rail would not extend all the way down, the crew placed a piece of railroad tie underneath the outriggers to stabilize the footing. While doing this, the engine of the hy-rail began to power down. Plaintiff went to give the engine some gas. While walking around the back of the hy-rail, he tripped over the tie sticking out from underneath the outrigger and twisted his left knee.

Plaintiff's Complaint alleges that Union Pacific:

a) failed to provide a reasonably safe place to work;

b) failed to provide reasonably safe methods of work;

c) failed to provide reasonably safe conditions for work;

d) failed to provide a reasonably safe boom truck or outrigger;

e) failed to provide reasonably safe equipment or tools for work;

---

[1] A hy-rail is a specially-equipped truck that can drive on roads and highways and has steel wheels that can be used to travel on rails and perform work.

  f) failed to provide adequate training;

  g) failed to provide adequate help;

  h) failed to properly inspect, repair or maintain its equipment; or

  i) failed to provide proper shims or support materials.

(Complaint, ¶6)

During the course of discovery, Plaintiff's counsel indicated that he will conduct *ex parte* interviews with the employees who were working with Plaintiff at the time of the incident. Each of these employees is responsible to ensure that the work was executed in a safe manner. Thus, the acts or omissions of these employees could be imputed to Union Pacific.

Union Pacific's counsel explained to Plaintiff's counsel that his *ex parte* interviews will violate Arkansas Rule of Professional Conduct 4.2 as adopted by the Eastern District. Rule 4.2 prohibits an attorney from speaking with a represented party without the consent of counsel. During the course of almost two months, Union Pacific has made good-faith attempts to resolve the issue and to reach a compromise with Plaintiff. *See* Letter from Attorney Jones to Attorney Groves, dated March 17, 2009, attached to the Motion as Exhibit 1; Email from Attorney Groves to Attorney Jones, dated March 21, 2009, attached to the Motion as Exhibit 2; Letter from Attorney Jones to Attorney Groves, dated April 28, 2009, attached to the Motion as Exhibit 3; and Email from Attorney Groves to Attorney Jones, dated May 6, 2009, attached to the Motion as Exhibit 4. Union Pacific offered to make these employees available for an interview where all counsel of record could be present. Alternatively, Union Pacific offered to make these employees available for depositions. Plaintiff rejected the offers and did not offer any alternatives. Thus, the parties have not resolved the dispute and Union Pacific must seek the Court's assistance in resolving this matter.

As discussed herein, any *ex parte* communications with employees whose acts or omissions could be imputed to Union Pacific would violate the ethical obligations of an attorney under Rule 4.2. Accordingly, a protective order prohibiting such conduct should be entered.

## II.  *EX PARTE* COMMUNICATIONS WOULD VIOLATE RULE 4.2.

This Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ." FRCP 26(c)(1).

Arkansas Model Rule 4.2 states that "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law." The Eastern District of Arkansas has adopted this rule. Rule IV. The rule prohibits communications with employees who regularly consult with the company lawyers regarding the case, with employees who have the authority to obligate the company with respect to the case, and with employees whose acts or omissions with respect to the subject matter may be imputed to the company. *Paris v. UPRR*, 450 F.Supp. 2d 913, 915 (E.D. Ark. 2006).

Plaintiff's Counsel wants to interview employees who were responsible to ensure a safe work place and who were involved in the incident. Consequently, they are employees whose acts or omissions may be imputed to Union Pacific. As such, any *ex parte* communications with these witnesses would violate Rule 4.2.

Plaintiff's counsel argues that Section 60 of the FELA permits the *ex parte* communications. Section 60 provides:

> Any contract, rule, regulation, or device whatsoever, the purpose, intent, or effect of which shall be to prevent employees of any common carrier from furnishing voluntarily information to a person in interest as to the facts incident to the injury or death of

>  any employee, shall be void, and whoever, by threat, intimidation, order, rule, contract, regulation, or device whatsoever, shall attempt to prevent any person from furnishing voluntarily such information to a person in interest, or whoever discharges or otherwise disciplines or attempts to discipline any employee for furnishing voluntarily such information to a person in interest, shall, upon conviction thereof, be punished by a fine of not more than $1,000 or imprisoned for not more than one year, or by both such fine and imprisonment, for each offense: *Provided*, That nothing herein contained shall be construed to void any contract, rule, or regulation with respect to any information contained in the files of the carrier, or other privileged or confidential reports.

45 U.S.C. § 60.

Section 60 is a prohibition on certain conduct by railroads and maritime employers. They are forbidden from enacting rules or regulations that prevent employees from disclosing information to FELA or Jones Act plaintiffs.[2] The phrase "rule, regulation, or device" in Section 60, read in context, refers to internal rules or regulations promulgated by employers. *See Norfolk & West'n Ry Co.,* 151 F.R.D. 67, 70 (S.D. W.V. 1993) (holding that Section 60 referred to company rules, not attorney ethics rules); *Garrett v. Nat'l R.R. Passenger Corp.*, 1990 WL 122911 (E.D. Pa. Aug. 14, 1990) ("Section 60 only prohibits the railroad from, through a policy or practice of intimidation or otherwise, barring employees from furnishing information regarding the facts of an accident voluntarily"). There is nothing to suggest that Section 60 was designed to authorize conduct that would otherwise violate the professional rules of ethics applicable to all attorneys.

There is a split of authority on this issue. *See Hornick v. American Comm'l Barge Line*, 2008 WL 2168893 (W.D. Ky. May 23, 2008) (stating as such). The only federal appellate court

---

[2] Because Congress intended to apply FELA rules to the Jones Act, judicial opinions interpreting one individual act applies to the other. *See e.g. American Dredging Co. v. Miller,* 510 U.S. 443, 456, 114 S.Ct. 981, 989 (1994) (noting that precedent under the FELA applies to the Jones Act).

to address the issue holds that *ex parte* communications, such as the communications proposed by Plaintiff's counsel in the present case, violate Rule 4.2. *Weibrecht v. Southern Illinois Transfer, Inc.*, 241 F.3d 875 (7th Cir. 2001).

Moreover, in the *Paris v. UPRR, supra,* decision Chief Judge Holmes noted that plaintiff's counsel cannot conduct *ex parte* communications with railroad employees whose acts or omissions could be imputed to the railroad. Judge Holmes in *Paris* had an opportunity to hold that Section 60 superceded Rule 4.2, but he did not do so.

### A.   *The most persuasive authority holds that the proposed conduct is prohibited.*

In *Weibrecht v. Southern Illinois Transfer, Inc.*, 241 F.3d 875 (7th Cir. 2001), the Seventh Circuit held that *ex parte* communications, such as those proposed in the present case, violate Rule 4.2. The Seventh Circuit is the only federal appellate court to rule on this issue.

In *Weibrecht,* a deckhand drowned while working on a barge. The estate brought an action under the Jones Act, alleging that the employer should have required the decedent to wear a life preserver and that it should have provided additional employees. The only witness was a fellow employee working with the decedent. Plaintiff's counsel contacted the employee-witness *ex parte*. The district court sanctioned Plaintiff's counsel for violating the district court's ethical rule, which was adopted from the state's version of Rule 4.2.

On appeal, the Seventh Circuit rejected the plaintiff's argument that Section 60 of the FELA allowed such contact. The Court concluded that there was no conflict between Section 60 and Rule 4.2 and that Rule 4.2 applied:

> With respect, we cannot agree with those who think that an irreconcilable conflict exists between §60 and Rule 4.2. §60 forbids rules or devices that prevent employees from furnishing information to a plaintiff or the plaintiff's lawyer, but nothing in §60 necessarily requires that the plaintiff's lawyer be allowed to gather information outside the presence of the employee's attorney.

> As we discuss further in a moment, not all employees are considered to be represented by a company's lawyers under Rule 4.2. If the employee is not represented, then the plaintiff's attorney would be free to contact that employee. If the employee is represented, however, under Rule 4.2 the plaintiff's attorney would be required to go through the employee's lawyer (who is most likely the company's lawyer) to schedule a deposition or otherwise gain information from the employee. Although this requirement might raise the cost of gathering information from the employee, we cannot say that such a requirement amounts to a rule or device that prevents the employee from furnishing information to the plaintiff's attorney.
>
> Moreover, if we read the word "prevent" in §60 to include the marginal deterrence imposed by Rule 4.2, we would effectively be finding that the FELA and the Jones Act were intended to displace generally applicable ethical rules. We see no evidence of such a radical move in either the text or the background of the statutes. At the time §60 was enacted in 1939, the attorney ethical rule against contacting represented parties was an ingrained part of the legal system. See, *e.g.,* ABA Canons of Professional Ethics, Canon 9 (1908). Had Congress wanted §60 to override such a long-standing rule of legal ethics, it easily could have said explicitly that it was doing so. That it did not suggests that in enacting §60 Congress was concerned specifically with rules, regulations, or devices concocted by the railroads to stifle employees' contacts with potential FELA claimants, and not with altering long-standing norms of litigation. We will not take silence in this instance as the equivalent of an intent to give §60 such a broad scope that it would preempt the state equivalents to Rule 4.2 and it would supersede federal rules like the one in the Southern District of Illinois.

241 F.3d at 880.

Several other district courts have similarly concluded there is no conflict between Section 60 and Rule 4.2, that Section 60 does not authorize *ex parte* contact, and that an attorney in an FELA or Jones Act case who does so violates Rule 4.2. *See e.g. Hornick v. American Comm'l Barge Line*, 2008 WL 2168893 (W.D. Ky. May 23, 2008); *Groppo v. Zappa, Inc.,* No. 03-CV-10384-MEL, 2005 U.S. Dist. LEXIS 5651, 2005 WL 768652 (D.Mass. Mar. 30, 2005); *In re PMD Enters. Inc.,* 215 F.Supp.2d 519 (D.N.J.2002); *Lewis v. CSX Transp., Inc.,* 202 F.R.D. 464 (W.D.Va.2001); *Woodard v. Nabors Offshore Corp.,* No. 002461, 2001 U.S. Dist. LEXIS 177,

2001 WL 13339 (E.D.La. Jan. 4, 2001); *Belote v. Maritrans Operating Partners, L.P.,* No. 97-3993, 1998 U.S. Dist. LEXIS 3571, 1998 WL 136523 (E.D.Pa. Mar. 20, 1998); *White v. Illinois Central R.R. Co.*, 162 F.R.D. 118 (S.D. Miss. 1995); *Tucker v. Norflok & W. Ry. Co.,* 849 F.Supp. 1096 (E.D.Va.1994); *Queensbury v. Norfolk & Western Ry. Co.*, 157 F.R.D. 21 (1993); *State ex rel Atchison, Topeka & Santa Fe R.R. v. O'Malley*, 888 S.W.2d 760 (Mo. App. 1994).

The Eastern District of Louisiana further explained that "it would be an illogical rule that made the identical attorney conduct ethical or unethical depending on the underlying law of the client's cause of action [ i.e., ethical if brought under FELA or the Jones Act and unethical if brought under any other law]. Before we adopt such a rule, there must be a clear expression of the intention of the federal law to supersede the traditional responsibility of the state to proscribe the standards by which officers of the court will be judged.  No such intention is expressed in the legislative history of Section 60." *Woodard v. Nabors Offshore Corp.,* No. 002461, 2001 U.S. Dist. LEXIS 177, 2001 WL 13339 (E.D.La. Jan. 4, 2001) (quotation marks and citations omitted). *See also Norfolk & West'n Ry Co.,* 151 F.R.D. 67, 70 (S.D. W.V. 1993) (holding that Section 60 referred to company rules, not attorney ethics rules); *Garrett v. Nat'l R.R. Passenger Corp.*, 1990 WL 122911 (E.D. Pa. Aug. 14, 1990) ("Section 60 only prohibits the railroad from, through a policy or practice of intimidation or otherwise, barring employees from furnishing information regarding the facts of an accident voluntarily").

For further example, in *White v. Illinois Central Railroad Co.*, 162 F.R.D. 118 (S.D. Miss 1995), the district court sanctioned the FELA plaintiff's attorney for obtaining an *ex parte* statement from a current railroad employee.  The plaintiff's attorney argued that 45 U.S.C. § 60 permitted him to talk with the employee without requesting permission.  The district court disagreed and held:

> The obvious purpose of Section 60 is to allow injured railroad workers to obtain needed information about accidents in which they have been involved from their co-workers and to protect these co-workers from retaliation by the railroad.  The section is not meant to be an excuse for attorneys representing railroad workers to sidestep their ethical responsibilities as set forth in Rules of Professional Conduct.  Rule 4.2 in no way prevents an injured railroad worker from obtaining needed information from his co-workers nor his co-workers from voluntarily furnishing such information.  Such a Plaintiff may depose such co-workers or may request the attorney for the railroad to approve a simple interview.

*White*, 162 F.R.D. at 120.

As noted above, *Weibrecht* held that there was no conflict between Section 60 and Rule 4.2 and that Rule 4.2 applied.  The Seventh Circuit went on to hold that the plaintiff's counsel violated Rule 4.2 when he contacted the employee-witness *ex parte*. The Seventh Circuit concluded that the employee-witness was responsible for overseeing the work and that his decisions about how that work was done would likely be imputed to the employer. Thus, he fit within the rule prohibiting *ex parte* communications. *Weibrecht*, 241 F.3d  at 883.

That is exactly the situation here: The employee-witnesses' conduct could be imputed to Union Pacific. As in *Weibrecht*, this Court should conclude that any *ex parte* interviews would violate Rule 4.2 and should enter a protective order prohibiting such conduct.

    **B.**    **The *Paris* Decision.**

The Eighth Circuit has not addressed the issue.  However, *Paris v. UPRR*, 450 F.Supp.2d 912 (2006), supports the position that Rule 4.2 would be violated under the circumstances in the present case.

In *Paris*, the plaintiff alleged carpal tunnel syndrome.  Plaintiff's counsel spoke with Paris' fellow employees Tommy Stuart and Clint Lacy.  Paris did not claim an acute injury, but rather that his injury accumulated over time.  Because there was not a single incident, the

employees were not employees whose acts or omissions could be imputed to Union Pacific. Union Pacific moved to exclude any statements, in part, on the basis that the *ex parte* communication violated Rule 4.2. Chief Judge Holmes reviewed Rule 4.2, observed that the Eastern District had adopted the rule, and noted that "[e]xcept with the consent of Union Pacific's lawyers, Paris's lawyers may not communicate with any Union Pacific employee who regularly consults with Union Pacific's attorneys concerning this case, who has the authority to obligate Union Pacific with respect to this case, or whose act or omission with respect to the subject matter of this case may be imputed to Union Pacific." 450 F. Supp.2d at 915. Because there was no proof that Stuart or Lacy fell into any of these three categories, Union Pacific's motion *in limine* was denied.

Although Paris argued that Section 60 superceded Rule 4.2 (Document 131-16), Judge Holmes' opinion does not discuss it. Judge Holmes could have held that Section 60 allowed the conduct in question, but he did not do so. To the contrary, he remarked that counsel would be prohibited from communicating *ex parte* with employees whose acts or omissions could be imputed to Union Pacific.

In the case at bar, Plaintiff's counsel wants to contact the Union Pacific employees who were working with Plaintiff at the time of his incident. It is undisputed that these employees' acts and omissions could be imputed to Union Pacific. Therefore, under *Paris*, Plaintiff's counsel may not contact these employees *ex parte*.

    **C.**    **The *Harper* decision is not persuasive authority.**

Plaintiff will rely on *Harper v. Mo Pac RR Co.*, 264 Ill. App. 3d 238 (1994), a decision from an intermediate state appellate court that was decided before *Weibrecht*. *Harper* involved a temporary restraining order against the railroad from "the practice of requiring knowledge and

consent of witness/employee interviews concerning facts incident to FELA . . . claimants' injuries or in any way interfering with *ex parte* communication by plaintiffs' attorneys with its employees regarding such claims." The railroad filed a motion to dissolve the TRO. The trial court held in favor of the plaintiff, holding that Section 60 preempted the restrictions of the state ethics rule regarding communications with represented persons. 264 Ill. App. 3d at 250.

The Illinois Court of Appeals affirmed the entry of the TRO, amending it only to require that any *ex parte* communications take place outside the employee's working hours. The Illinois Court of Appeals would later affirm a permanent injunction on the same grounds in *Harper II*, 282 Ill. App. 3d 19 (Ill. App. 1996). The issue in *Harper II* was not only the permanent injunction, but also whether Union Pacific was properly sanctioned by the trial court for allegedly violating the TRO by changing a company rule regarding statements made by employees. The trial court held, and the Illinois Court of Appeals affirmed, that Union Pacific violated the TRO by forbidding employees from making statements without railroad permission. The Illinois Court of Appeals concluded that Union Pacific would be required to pay the plaintiff's reasonable costs and attorneys fees associated with the contempt proceeding and a fine of $150 per day. Union Pacific was further ordered to send a statement to its employees consistent with the order.

The *Harper* decision is distinguishable from the case at bar in several key respects. First, the employees in *Harper* were not employees whose acts or omissions could be imputed to Union Pacific. Second, it was decided in the 1990s. Since that time, numerous courts have concluded that Rule 4.2 does not conflict with Section 60 and that Rule 4.2 prohibits these *ex parte* communications. *Hornick v. American Comm'l Barge Line*, 2008 WL 2168893 (W.D. Ky. May 23, 2008); *Groppo v. Zappa, Inc.,* No. 03-CV-10384-MEL, 2005 U.S. Dist. LEXIS 5651,

2005 WL 768652 (D.Mass. Mar. 30, 2005); *In re PMD Enters. Inc.,* 215 F.Supp.2d 519 (D.N.J.2002); *Lewis v. CSX Transp., Inc.,* 202 F.R.D. 464 (W.D.Va.2001); *Woodard v. Nabors Offshore Corp.,* No. 002461, 2001 U.S. Dist. LEXIS 177, 2001 WL 13339 (E.D.La. Jan. 4, 2001); *Belote v. Maritrans Operating Partners, L.P.,* No. 97-3993, 1998 U.S. Dist. LEXIS 3571, 1998 WL 136523 (E.D.Pa. Mar. 20, 1998); *White v. Illinois Central R.R. Co.*, 162 F.R.D. 118 (S.D. Miss. 1995); *Tucker v. Norflok & W. Ry. Co.,* 849 F.Supp. 1096 (E.D.Va.1994); *Queensbury v. Norfolk & Western Ry. Co*., 157 F.R.D. 21 (1993); *State ex rel Atchison, Topeka & Santa Fe R.R. v. O'Malley*, 888 S.W.2d 760 (Mo. App. 1994). Third, *Harper* is an intermediate state court decision. The highest court in the country to rule on the issue, the Seventh Circuit Court of Appeals, supports Union Pacific's position.

### III. CONCLUSION.

Rule 4.2 would be violated if Plaintiff's counsel conducted *ex parte* interviews with employees whose acts or omissions on the day of September 6, 2007 could be imputed to Union Pacific. Accordingly, a protective order prohibiting such conduct should be entered.

    Respectfully submitted,

    JAMES C. BAKER #86009
    JAMIE HUFFMAN JONES # 2003125
    Friday, Eldredge & Clark, LLP
    400 West Capitol Avenue, Suite 2000
    Little Rock, Arkansas 72201-3522
    (501) 376-2011 – Telephone
    (501) 244-5340 – Facsimile

    *Attorneys for Defendant Union Pacific Railroad Company*

    By:   /s/ Jamie Huffman Jones
           JAMIE HUFFMAN JONES

## CERTIFICATE OF SERVICE

I, Jamie Huffman Jones, hereby certify that the foregoing pleading has been filed using the CM/ECF Filing System on the 28th day of May, 2009, and the Clerk shall send notification of such filing to the following:

Steven L. Groves – sgroves@allfela.com

/s/ Jamie Huffman Jones
JAMIE HUFFMAN JONES
